UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID LAZARUS,

    *Plaintiff,*

v.

    Case No. 1:20-cv-1787-RCL

KARIZAD, LLC *and*
WILMINGTON SAVINGS FUND
SOCIETY, FSB,

    *Defendants.*

## MEMORANDUM OPINION

On December 27, 2019, David Lazarus filed a complaint in District of Columbia Superior Court against two entities, Karizad, LLC ("Karizad") and Wilmington Savings Fund Society, FSB ("Wilmington"), seeking legal and equitable relief for their alleged wrongful foreclosure of his home. Complaint at 1, ECF No. 1-1. On July 1, 2020, Wilmington, with Karizad's consent, removed the case to this Court via 28 U.S.C. § 1441. Not. of Removal, ECF No. 1. Wilmington then filed a "motion ot [sic] dismiss" for "failure to state a claim" asserting that Lazarus's suit "is barred by res judicata." Mot. to Dismiss at 1, 4, ECF No. 7-1. Lazarus responded by moving to remand the case to D.C. Superior Court, contending that removal was waived and untimely. Mot. to Remand at 7, 10–11, ECF No. 10. Having considered the briefs and the accompanying record, the Court agrees with Lazarus that this case was not timely removed. Thus, the Court will **GRANT** Lazarus's motion to remand, ECF No. 10. Further, the Court will **DENY AS MOOT** Lazarus's motion to strike Karizad's affidavit regarding diversity of citizenship, ECF No. 16. It

1

will also **DENY** Wilmington's motion to dismiss, ECF No. 7, since this case was improperly removed.

## I. BACKGROUND

A comprehensive review of this case's already-convoluted procedural history is necessary to resolve the pending motions. David Lazarus is a former Marine and current Special Agent of the United States Capitol Police. Complaint, ECF No. 1-1 at 7.[1] In June 2004, he bought a home with a loan secured by a deed of trust at 1813 A Street, S.E., in Washington, D.C. *Id.*; *see also* Recorder of Deeds, ECF No. 1-1 at 50 (noting Lazarus's home-financing activity). In 2017, Lazarus began to fall behind on his loan payments, placing his home in danger of foreclosure. Foreclosure Notice, ECF No. 1-1 at 284; *see also* Recorder of Deeds, ECF No. 1-1 at 50. Accordingly, Wilmington mailed him a notice of default in August 2017 and warned that it might begin a foreclosure sale if he did not agree to mediation. Notice of Default, ECF No. 1-1 at 282–86; *see also* Affidavit of Mailing, ECF No. 1-1 at 295–96 (attesting that Wilmington sent the foreclosure notices to Lazarus by certified mail).[2]

Wilmington apparently did not begin the threatened foreclosure right away. It sent more foreclosure notices to Lazarus on September 14, 2017 and July 26, 2018, along with a foreclosure mediation certificate. Recorder of Deeds, ECF No. 1-1 at 50. (Lazarus claims he never received those documents. Complaint, ECF No. 1-1 at 11.) Wilmington eventually sent Lazarus yet another

---

[1] For clarity, the Court cites the page numbers assigned to the Notice of Removal exhibits by the Electronic Case Filing (ECF) system, rather than the page numbers contained in the original documents.

[2] Lazarus alleges that around this time, a representative of Karizad left a business card at 1813 A Street S.E. claiming that Karizad was the property's new owner and that Lazarus needed to vacate the premises. Lazarus Dec., ECF No. 1-1 at 61. Why Karizad would have left such a communication in August *2017*—before it purported to purchase the property at an auction in August *2018*—is unclear. Though Lazarus's declaration states, indeed, that "[i]n August 2017" a representative of Karizad left the card, the Court is unsure whether "2017" is a typographical error and the declaration meant to refer to August *2018*. *Id.* August 2018 is when an auction house, Harvey West Auctioneers, purported to sell the subject property to Karizad. Mem. of Purchase, ECF No. 1-1 at 48. A typographical error is not outside the range of possibilities. The Court notes that the same declaration has other careless errors; for instance, Lazarus's own name is misspelled twice.

2

foreclosure notice on June 3, 2019, warning that he might lose his home. Not. of Default, ECF No. 1-1 at 39–40. The District of Columbia Recorder of Deeds reflects no transfer of title to the subject property in the period between those notices. Recorder of Deeds, ECF No. 1-1 at 50.

Oddly, however, on August 28, 2018, D.C. auction house Harvey West Auctioneers conducted a purported sale of Lazarus's property. Mem. of Purchase, ECF No. 1-1 at 48. The highest bidder was Karizad, represented at the auction by its managing member, Daria Karimian. *Id.* Karizad's winning bid, reflected by the corresponding memorandum of purchase, was $530,000. *Id.* Next to Karimian's signature on the memorandum is that of Erin August, whom the memorandum describes as the substitute trustee. *Id.* Lazarus alleges that August was a lawyer representing the "Christiana Trust," an entity controlled by Wilmington. Lazarus Dec., ECF No. 1-1 at 61; *see also* Notice of Default, ECF No. 1-1 at 283 (describing the entity threatening foreclosure as "Wilmington Savings Fund Society, FSB /dba/ Christiana Trust").

On March 3, 2019, about six months after the auction, Karizad sent a notice to vacate to "unknown occupants" at the subject property. Not. to Quit and Vacate, ECF No. 1-1 at 42. The notice alleged that the occupants' (i.e., Lazarus's) "interest in the property . . . was lawfully foreclosed by Harvey West Auctioneers," and that "[t]he property is now lawfully owned by Karizad, LLC." *Id.* It also alleged that Harvey West had sent a "notice of auction as required by law." *Id.* (The present record does not contain that notice of auction, and Lazarus denies he ever received it. Complaint, ECF No. 1-1 at 11.) The notice also warned that "as a foreclosed upon prior owner," Lazarus had thirty days to vacate the premises, or else Karizad would file "a lawsuit for possession . . . in the Landlord and Tenant Branch of the DC Superior Court." Not. to Quit and Vacate, ECF No. 1-1 at 42.

3

Despite Karizad's description of itself as the lawful owner of the property, Wilmington continued to send Lazarus notices about his loan. On May 10, 2019, it offered Lazarus a loan modification agreement that would "place the foreclosure on hold." Loan Mod., ECF No. 1-1 at 45–46. Any negotiations apparently fell through; Wilmington sent Lazarus another notice of default, as mentioned, on June 3, 2019. Not. of Default, ECF No. 1-1 at 39–40. That notice warned Lazarus that he needed to pay $272,719.63 by June 28, 2019 "to bring [his] loan current." *Id.* The notice also explained that Lazarus could elect to mediate the default, but that he would need to make the mediation election by July 3, 2019. *Id.* And it explained that if Lazarus "d[id] not elect to participate in mediation or bring your loan current, Wilmington . . . may initiate foreclosure of your mortgage and sell your home at a foreclosure sale." *Id.*[3] Again, why Wilmington was warning Lazarus of an impending foreclosure sale in 2019 when it had supposedly sold the property to Karizad via Harvey West in August 2018 is unclear.

On July 5, 2019—two days after Wilmington demanded that Lazarus pay $272,719.63 "to bring [his] loan current" and avoid foreclosure—Karizad filed an action in D.C. Landlord and Tenant court against Lazarus to procure his eviction. Not. of Default, ECF No. 1-1 at 39–40; Verified Complaint, ECF No. 1-1 at 43–44. In its verified complaint in the Landlord and Tenant court, assigned D.C. case number 2019 LTB 014158, Karizad described itself as "the Landlord or Owner" of the property. Verified Complaint, ECF No. 1-1 at 43–44.[4] And it described Lazarus as

---

[3] The Court notes that Wilmington's use of the term "mortgage" here is misleading. Lazarus's loan was not secured by a traditional mortgage, strictly speaking, but by a deed of trust with a power-of-sale clause. The essential difference is that while a mortgage lender must enforce his rights in the event of default in a judicial proceeding, the trustee may enforce such rights extrajudicially. *See* Donald J. Murray, *A Practitioner's Guide to Foreclosure on a Deed of Trust in the District of Columbia*, 33 CATH. U. L. REV. 1187, 1187–89 (1984). Karizad apparently perceived this case to involve the latter, since it described its foreclosure in Landlord and Tenant court as a "non-traditional" and nonjudicial foreclosure. Tr. at 2:11–14, ECF No. 1-1 at 56.

[4] The Court notes that Karizad's description of itself on July 5, 2019 as "the Landlord or Owner" of 1813 A Street S.E. is also misleading. At best, assuming the August 28, 2018 auction represented a valid sale of the subject property, Karizad would have had equitable title. Equitable title suffices in an action for possession, but not in an action for ejectment, the remedy Karizad specifically requested in its verified complaint. *See Ward v. Wells Fargo Bank, N.A.,*

4

"a foreclosed homeowner holding over after expiration of a Notice to Quit." *Id.* Accordingly, Karizad requested "[j]udgment for possession of the property described with no right to redeem the tenancy," a so-called "non-redeemable judgment." *Id.*

Nineteen days after Karizad had described itself as "the Landlord or Owner" of the subject property in Landlord and Tenant court, Karizad and Erin August executed a deed on July 24, 2019 that finally purported to convey the property to Karizad. Substitute Trustee's Deed, ECF No. 1-1 at 35–37. The deed represented that "the Substitute Trustee," Erin August, had offered the property "for sale . . . at public auction" at Harvey West Auctioneers on August 28, 2018. *Id.* And it explained that on that date, "Karizad became the purchaser . . . for the sum of $530,000," since it was the highest bidder. *Id.* Karizad does not appear to have recorded this deed until August 5, 2019. Property History, ECF No. 1-1 at 67; Recorder of Deeds, ECF No. 1-1 at 50.

Following Karizad and Erin August's deed execution, Wilmington cancelled the mediation proceeding on July 30, 2019 that was supposedly pending regarding Lazarus's loan default. Cancellation of Mediation, ECF No. 1-1 at 41. Lazarus alleges that he never received notice of any mediation attempt nor any paperwork about the mediation, such as a mediation report or a mediation certificate. Complaint, ECF No. 1-1 at 11.

On September 5, 2019, the D.C. Landlord and Tenant court, Magistrate Judge Adrienne Noti presiding, adjudicated Karizad's July 5 verified complaint requesting a non-redeemable judgment of possession. *See* Verified Complaint, ECF No. 1-1 at 43–44; 9/5/2019 Hearing Tr., ECF No. 1-1 at 55–56. When Judge Noti asked Karizad's counsel whether he had been able to

---

89 A.3d 115, 122 n.6 (D.C. 2014) ("[A]lthough legal title is required in order to bring an action in ejectment, equitable title suffices to bring an action for possession[.]"). To effect ejectment, Karizad would have required *legal* title. But that did not arise until Erin August (allegedly) deeded the property to Karizad on July 24, 2019. *See* Substitute Trustee's Deed, ECF No. 1-1 at 35–37; *see also Barbour v. Baltz*, 146 A.2d 905, 906 (D.C. Mun. Ct. 1958) (noting that a "deed of trust . . . convey[s] legal title to the trustees").

identify a case number for the foreclosure, Karizad's counsel explained that "this was a non-traditional foreclosure." 9/5/2019 Hearing Tr. at 2:11–14, ECF No. 1-1 at 56. In other words, it had proceeded as a nonjudicial foreclosure rather than a judicial foreclosure. When Judge Noti asked whether Lazarus had any opposition to the requested non-redeemable judgment, his counsel objected that "there wasn't proper process with relation to the foreclosure itself." *Id.* at 2:18–25. He later reiterated that Lazarus was "never served with any [notice]" of the foreclosure, and that "there was never any notice sent." *Id.* at 3:7–19.

Magistrate Judge Noti categorically declined to entertain these challenges to "the underlying foreclosure process." *Id.* at 3:20–21. She explained that the only relevant inquiry before the Landlord and Tenant court was whether there was "proof of a foreclosure"—*not* whether that foreclosure was procedurally valid. *Id.* at 3:1–4. In other words, because she interpreted Lazarus as challenging "not that [a foreclosure] *exists*" but "the process surrounding the foreclosure," the Landlord and Tenant court "d[id] not have the authority to hear" Lazarus's objections. *Id.* at 5:17–22 (emphasis added). And because she considered those arguments outside the Landlord and Tenant court's authority, she granted Karizad a non-redeemable judgment for possession. *Id.* at 5:20–22.

Having obtained that judgment, Karizad filed a new complaint on October 17, 2019 against Lazarus in the D.C. Superior Court's Civil Division, which was assigned the case number 2019 CA 006837. Complaint, ECF No. 1-1 at 51–54.[5] Karizad sued for unjust enrichment on the theory that Lazarus had been an unlawful holdover tenant since all the way back to August 28, 2018—when, Karizad said, it had gained "equitable title" to the property via the Harvey West

---

[5] The Court takes judicial notice of the 2019 CA 006837 proceeding that began with Karizad's October 17 complaint and which is publicly available on the District of Columbia Superior Court's ECF website. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (noting that courts have "authority to judicially notice related proceedings in other courts").

6

auction. *Id.* at 53. Karizad sought $67,200 in unpaid rent that had accrued since the auction, along with another $4,800 for every future month that Lazarus remained on the property. *Id.* (Lazarus asserts, for his part, that Karizad never made any rent demands before suing. Complaint, ECF No. 1-1 at 23.)

Acting under the Landlord and Tenant court's September 5, 2019 judgment for possession (and a subsequent writ of restitution), the United States Marshal Service evicted Lazarus and his family from the property on December 23, 2019. Order, ECF No. 1-1 at 203. Lazarus alleges that when he returned to his home, its doors were locked shut. Complaint, ECF No. 1-1 at 5. Karizad gave Lazarus and his family a few days after the eviction to remove their property and vacate the premises. 1/3/2020 Hearing Tr. at 5:17–22, ECF No. 1-1 at 144.

On December 27, 2019, four days after the lock-out, Lazarus filed his own complaint in D.C. Superior Court against both Karizad and Wilmington, alleging causes of action for fraud, wrongful foreclosure, wrongful eviction, breach of contract, and intentional infliction of emotional distress (IIED). Complaint, ECF No. 1-1 at 22–32. Lazarus's complaint was assigned a new case number, 2019 CA 008433. *Id.* Of course, that pleading was not the first complaint filed over the parties' dispute, but the second. Karizad had sued Lazarus back on October 17 over precisely the same issues. So despite Lazarus styling his December 27 pleading as his "complaint," *id.*, and despite Wilmington later calling it the document that "commenced this action," that is not so. Complaint, ECF No. 1-1 at 5; Not. of Removal at 1, ECF No. 1. Lazarus's December 27 filing was really a counterclaim—and Lazarus himself the defendant/counter-plaintiff—since Karizad had already sued him over the very same dispute. *See infra* pages 10–17. Inversely, original plaintiff Karizad became the plaintiff/counter-defendant. And Wilmington, newly brought into the suit with Lazarus's December 27 counterclaim, became a third-party counterclaim defendant.

7

Karizad moved to dismiss Lazarus's complaint on January 22, 2020, arguing that his claims were "barred by the doctrine of res judicata." Mot. to Dismiss, ECF No. 1-1 at 104. Karizad contended that the Landlord and Tenant court had already established that title was Karizad's and that Lazarus should have presented his own causes of action at that proceeding. *Id.* Lazarus responded that Magistrate Judge Noti had explicitly declined to entertain those claims and had advised him to file them elsewhere. Opposition, ECF No. 1-1 at 110. Superior Court Judge Yvonne Williams later denied Karizad's motion to dismiss on that basis. Order, ECF No. 1-1 at 207. Siding with Lazarus, she noted that the Landlord and Tenant court did not and could not have adjudicated Lazarus's claims. *Id.* (noting that challenges to the foreclosure belonged in a "different branch of the Superior Court"). Thus, she held, "the doctrine of res judicata does not apply." *Id.*

As the proceedings continued to unfold in D.C. Superior Court, still exclusively between Karizad and Lazarus, Lazarus struggled to effect service on Wilmington. He attempted service three times, culminating in service on Edgar Lopez. Lazarus claims that Lopez was Wilmington's authorized agent. Aff. of Process Server, ECF No. 1-1 at 187. Wilmington disputes that characterization and, on April 24, 2020, moved to quash service. Mot. to Quash, ECF No. 1-1 at 216. Judge Williams granted the motion a month later, holding that Lopez "clearly" was not Wilmington's agent. Order, ECF No. 1-1 at 301. But she declined to dismiss the case, finding that though Lazarus had not yet served Wilmington, he reasonably could perfect service with another attempt. *Id.* at 302.

On June 11, 2020, Lazarus finally served Wilmington. Wilmington does not dispute that it was served on that date. Not. of Removal at 2, ECF No. 1.[6] On July 1, 2020, twenty days later,

---

[6] Lazarus argues that he perfected service earlier, but the Court need not address that issue. *See* Mot. to Remand at 3 n.3, ECF No. 10-1 (describing his "first service" on Wilmington). Even assuming Wilmington's removal attempt was timely, it was still improper for the reasons addressed *infra* at pages 10–17.

8

Wilmington removed the case to this Court, to which Karizad consented. Not. of Removal, ECF No. 1. Lazarus moved to remand on July 20, and Wilmington responded on July 31. Mot. to Remand, ECF No. 10; Response, ECF No. 13. Because the Court must settle the parties' dispute about the propriety of Wilmington's removal before it may contemplate other relief, the Court turns to Lazarus's motion to remand.

## II. LEGAL STANDARD

The purported basis of this Court's jurisdiction is diversity of citizenship. Not. of Removal at 3, ECF No. 1. The diversity jurisdiction statute, 28 U.S.C. § 1332, provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the controversy is between "citizens of different states." §§ 1332(a) & (a)(1).[7] When a civil action satisfies those requirements, the plaintiff may file it in federal court in the first instance. But if the plaintiff files a suit in state court that was also within the federal court's original jurisdiction (and the defendant is not a citizen of that state) the defendant may also remove the action to federal court. *See* 28 U.S.C. § 1441(a); *see also id.* at (b)(2) (explaining that "[a] civil action otherwise removable . . . may not be removed if [the defendant] is a citizen of the State in which such action is brought"—the so-called forum-defendant rule). As the removal statute puts it, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[ ] may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* § 1441(a).

---

[7] The Court notes that the statute treats the District of Columbia as a "state" for jurisdictional purposes. *See* § 1332(e) ("The word 'States,' as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.").

Procedural aspects of removal are governed by 28 U.S.C. § 1446. That section provides that the "defendant or defendants desiring to remove any civil action from a State court" must file a notice of removal "containing a short and plain statement of the grounds for removal" in the federal district court. § 1446(a). The statute also explains that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" *Id.* at (b)(1). The Supreme Court has construed that thirty-day removal clock to begin counting down only after the defendant has received the complaint *and* formal service. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 342, 350 (1999).

### III.   DISCUSSION

In his motion to remand, Lazarus argues that this action was not timely removed. Mot. to Remand at 4, ECF. No. 10-1 (calling Wilmington's removal "untimely"). The Court agrees for three reasons. First, §§ 1441 and 1446 permit removal only by *original* defendants to the civil action, not by third-party counterclaim defendants. Second, litigants may not evade that rule by filing duplicative litigation that recharacterizes a counterclaim as a new civil action. Third, applying those principles, Lazarus is actually the *defendant* in this case, not the plaintiff, and he never timely removed. Wilmington, by contrast, is merely a third-party counterclaim defendant, and thus may not remove under §§ 1441 and 1446. For those reasons, the removal deadline lapsed long ago—in January 2020. Remand, therefore, is the appropriate remedy.

   *1. Sections 1441 and 1446 Permit Removal Only by Original Defendants; Not by Third-Party Counterclaim Defendants.*

Both §§ 1441 and 1446 speak of removal by the "defendant" or the "defendants." *Compare* § 1441(a) (explaining that civil actions "may be removed by the defendant or the defendants") *with* § 1446 (explaining the procedural requirements "[a] defendant or defendants" must follow to

10

remove a civil action). But *which* "defendant" or "defendants" are the relevant "defendants" for removal purposes? One possible view is that those terms refer to *any* party defending against a claim, whether that claim was advanced in the original complaint or in a later pleading, such as a counterclaim by the defendant against the plaintiff. Another view is that the statute's reference to "defendant or defendants" encompasses only the *original* defendant—the defendant whom the original plaintiff first sued in the original complaint.

In its 1941 *Shamrock* decision, the Supreme Court decisively endorsed the latter construction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941). The relevant "defendant" for removal purposes, in other words, is not any party defending against any claim, but the *original* defendant named in the *original* complaint. *Id.* In *Shamrock* itself, a non-citizen plaintiff sued a Texas defendant in Texas state court. *Id.* at 103. Under the forum-defendant rule, such actions are, of course, non-removable. § 1441(b)(2). But the Texas defendant then filed a state-court counterclaim against the non-citizen plaintiff. *Shamrock*, 313 U.S. at 103. The non-citizen plaintiff removed the action to federal court on the theory that the counterclaim made it a "defendant" under the removal statute. *Id.* The Fifth Circuit remanded the case to state court, however, and the Supreme Court affirmed, holding that the non-citizen plaintiff was not a "defendant" for removal purposes. *Id.* at 103, 107–09. In so doing, *Shamrock* established the proposition that a counterclaim defendant is not the sort of "defendant" entitled under the removal statute to remove a civil action.

More recently, the Supreme Court confirmed and extended the *Shamrock* principle in its 2019 decision *Home Depot U.S.A., Inc. v. Jackson*. 139 S. Ct. 1743 (2019). In *Home Depot*, original plaintiff Citibank sued original defendant Jackson in North Carolina state court for debts Jackson owed on a Home Depot credit card. *Id.* at 1747. Jackson then counterclaimed against

Home Depot. *Id.* Home Depot was, thus, "a third-party counterclaim defendant—that is, a party brought into [the] lawsuit through a counterclaim filed by the original defendant[.]" *Id.* at 1745–46. Implicated in the lawsuit via the counterclaim, Home Depot contended that it was a "defendant" under the removal statute and removed the action to federal court. *Id.* at 1747. But again, the Supreme Court ruled removal improper. Extending *Shamrock*, it held that "a third-party counterclaim defendant is not a 'defendant' who can remove under § 1441(a)" either. *Id.* at 1750. Thus, "§ 1441(a) does not permit removal by *any* counterclaim defendant, including parties brought into the lawsuit for the first time by the counterclaim." *Id.* at 1748 (emphasis added). Rather, it permits removal only by the *original* defendant or defendants. But that holding also raises another question: how must federal courts determine, in close cases, which party or parties constitute the *original* defendants?

> 2. *Federal Law Determines the Identity of the Original Plaintiff and the Original Defendant. How the Parties or the State Court Label State-Court Filings Does Not Affect that Determination.*

Closely related to the doctrine of *Shamrock* and *Home Depot* is the principle that determining which party is the original defendant for removal purposes is a question of federal law. *See Shamrock*, 313 U.S. at 104. In other words, the names the parties give themselves in state court proceedings (or, for that matter, the labels they attach to their state-court filings) do not control. *Shamrock* itself recognized that principle, and courts have adhered to it since. *See id.* (noting that the parties' identity "turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions"); *see also Chicago Rock Island & Pac. R.R. v. Stude*, 436 U.S. 574, 579–80 (1954) ("For the purpose of removal, federal law determines who is plaintiff and who is defendant."); *LPP Mortg. Ltd. v. Agee*, No. 15-cv-01246-RDP, 2015 WL 5963606, at *2 (N.D. Ala. Sept. 29, 2015) ("[T]he parties' choices of

title are not decisive because in determining the removing parties' proper characterization, federal law controls.") (internal quotation marks omitted).

As is plainly evident, the *Shamrock* doctrine would have little practical importance if federal courts could not so recharacterize state-court filings. For instance, assume the facts of *Shamrock*: a non-citizen plaintiff sues a Texas defendant in Texas state court, and the Texas defendant counterclaims. *Shamrock* itself held that the non-citizen plaintiff's new status as a counterclaim defendant could not support removal, since the removal statute encompasses only original defendants. But what if, rather than plead its cause of action as a counterclaim, the Texas defendant simply filed a new *complaint*—styling itself as the "plaintiff"—with exactly the same causes of action against the non-citizen "defendant"? That would be a convenient method for circumventing *Shamrock*, which is precisely why federal courts disallow it.

As the Supreme Court has explained, it is the "duty . . . of the lower federal courts[ ] to look beyond the pleadings and arrange the parties according to their sides in the dispute." *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 16 n.5 (1989). "Federal courts," therefore, "are required to realign the parties in an action to reflect their interests in the litigation." *City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012). Though most commonly deployed when assessing whether diversity jurisdiction exists, realignment principles are just as applicable in the removal context. *See Hill v. Maton*, 944 F. Supp. 695, 698 n.4 (N.D. Ill. 1996); *Kenko Int'l, Inc. v. Asolo S.r.l.*, 838 F. Supp. 503, 505 (D. Colo. 1993). Thus, "for purposes of the removal statute[,] the court may disregard state law labels and state law procedures and realign the parties in conformity with their substantive interests in the matter." *Hill*, 944 F. Supp. at 698 n.4.

The case of *Rodriguez v. Federal National Mortgage Association* is instructive in this regard. 268 F. Supp. 2d 87 (D. Mass. 2003). There, the Federal National Mortgage Association

13

(FNMA) sued Edwin Gonzalez for ejectment in Massachusetts state court. *Id.* at 88. Gonzalez counterclaimed under Massachusetts consumer protection and civil rights statutes. *Id.* FNMA and Gonzalez then entered into a stipulation providing that FNMA would dismiss its existing state-court complaint, Gonzalez would re-file his counterclaims as a new state-court complaint, and their filings would thereafter describe Gonzalez as the "plaintiff" and FNMA as the "defendant." *Id.* FNMA, apparently to Gonzalez's surprise, then removed the new action to federal court, prompting Gonzales to move for remand. *Id.* at 88–89.

On review, the federal court ruled (correctly) that Gonzalez's new "complaint" was not really a second civil action. *Id.* at 90. Rather, the parties' attempt to recharacterize their positions did not change "the basic character of the lawsuit," which had been "initiated by FNMA." *Id.* Thus, Gonzalez's "complaint" was really a counterclaim, and Gonzalez really the original defendant, meaning that only Gonzalez, not FNMA, could remove. As the court pointed out, a contrary result would invite "jurisdictional havoc," since it would permit parties to functionally overrule *Shamrock* by simply switching positions in the litigation. *Id.* at 90.

So for similar reasons, Lazarus's characterization of his December 27 filing as a "complaint" in which he was the "plaintiff" is susceptible to reexamination by this Court.

### 3. Applying Those Principles, Third-Party Counterclaim Defendant Wilmington Cannot Invoke Removal. Only Original Defendant Lazarus May Remove, and the Time To Do So Has Long Expired.

Applying those principles to the present case reveals that despite the labels the parties employed in D.C. Superior Court, Lazarus is not the "plaintiff" to this action, and neither Karizad nor Wilmington are the "defendants" contemplated by the removal statute. Rather, Lazarus is actually the original *defendant* to this action, so only Lazarus could have removed under §§ 1441 & 1446. Karizad, by contrast, is the action's original *plaintiff*. And Wilmington is not an original

14

defendant, but a third-party counterclaim defendant, since it entered the suit through Lazarus's December 27 "complaint" (which was actually a counterclaim).

As mentioned, Wilmington's notice of removal describes that December 27, 2019 "complaint" as the filing that "commenced this action." Not. of Removal at 1, ECF No. 1. In reality, the action actually commenced on October 17, 2019,[8] when *Karizad* sued *Lazarus* in D.C. Superior Court. *See* Complaint, ECF No. 1-1 at 51. Karizad's October 17 complaint concerned exactly the same dispute as Lazarus's December 27 filing. Namely, Karizad argued that it was the property's true owner, that Lazarus was an unlawful holdover tenant, and that he owed Karizad damages for unpaid rent. Lazarus's later "complaint" simply mounted the same attack in reverse: that Karizad was *not* the subject property's true owner and that Karizad owed Lazarus damages for its efforts to wrongfully evict him.

Under the federal law of removal, therefore, Lazarus's December 27 filing was not a "complaint," but a counterclaim. Moreover, since it concerned precisely the same transaction as Karizad's October 17 complaint, it was a *compulsory* counterclaim. Fed. R. Civ. P. 13(a)(1)(A) (providing that transactionally related counterclaims are compulsory). So under both the District

---

[8] Recall that Karizad also filed an antecedent action in Landlord and Tenant court on July 5, 2019 seeking a non-redeemable judgment of possession, which Magistrate Judge Noti granted on September 5. Verified Complaint, ECF No. 101 at 43–44; 9/5/2019 Hearing Tr., ECF No. 1-1 at 55–56. One possible view is that this complaint began the relevant "civil action" under § 1441, and thus that Lazarus would have had to seek removal thirty days after service of the Landlord and Tenant complaint. That view is undercut by the fact that Magistrate Judge Noti ruled in the Landlord and Tenant proceeding that she had authority to consider *only* whether a foreclosure existed, and not whether the foreclosure was valid, to say nothing of Lazarus's later claims about breach of contract or IIED. 9/5/2019 Hearing Tr. at 3:20–21, ECF No. 1-1 at 57–59. *Cf. Barnes v. Scheve*, 633 A.2d 62, 65–66 (D.C. 1993) (explaining that "the rules governing the Landlord and Tenant Branch narrowly and specifically limit its reach"). Indeed, Superior Court Judge Yvonne Williams later ruled that the Landlord and Tenant proceeding was not res judicata as to claims in Lazarus's Superior Court case, since that action involved claims that could not "have been raised in the prior proceeding." Order, ECF No. 1-1 at 207. Judge Williams's conclusion that the two actions were distinct does not technically *bind* this Court, since removability is governed by federal law. But her analysis is "a factor to be considered," and the Court finds it persuasive. The issues in the Landlord and Tenant proceeding and the later Superior Court proceedings were, indeed, "different and separate" in their scope, and so they count as distinct "civil actions" under § 1441. *See Graef v. Graef*, 633 F. Supp. 450, 453–54 (E.D. Pa. 1986). In any event, nothing in this Court's holding on removability turns on this point. Karizad was the original plaintiff (and Lazarus the original defendant) in both the Landlord and Tenant matter *and* the later Superior Court matter. So Lazarus has always been the original defendant for removal purposes.

of Columbia's procedural rules and Federal Rule of Civil Procedure 13, Lazarus was obliged to assert his own causes of action as counterclaims in his answer to Karizad's complaint. *Id.*; *see also* D.C. Civil Rule 13 (noting that the D.C. rule is "[i]dentical" to FRCP 13). Instead, however, he filed a *new* case concerning precisely the same transaction. That was, of course, procedurally improper, and the Superior Court explicitly recognized that the two actions should be consolidated. *See* Order, ECF No. 1-1 at 207 (noting that the parties should "move in both actions for the consolidation of the matters").

But Wilmington removed this action before the matters could be consolidated, which has led to the bizarre scenario the Court now confronts. The parties have apparently continued to litigate Karizad's October 17 complaint, assigned D.C. case number 2019 CA 006837, in the D.C. Superior Court. The Superior Court's publicly accessible electronic case filing system reflects that the Superior Court partially granted and partially denied Karizad's motion for summary judgment on December 8, 2020. *See* Order Granting in Part Motion for Summary Judgment, Signed by Judge Matini, 12/08/2020. The parties even attended a mediation session few days ago, on February 18, 2021. (The mediation, the Court is sorry to learn, was apparently unsuccessful.) For whatever reason, neither party has ever bothered to inform the Court of these developments. Instead, as that case hums along in Superior Court, Wilmington seeks to have this Court assume jurisdiction over Lazarus's parallel and entirely duplicative action.

Happily, federal removal principles preclude such nonsense. Because Lazarus's December 27, 2019 "complaint" was really a counterclaim and not a distinct civil action, Wilmington is not an original defendant and cannot remove under §§ 1441 and 1446. Wilmington is, rather, "a third-party counterclaim defendant . . . brought into [the] lawsuit through a counterclaim filed by the original defendant." *Home Depot*, 139 S. Ct. at 1745–46. And as the

16

Court has now mentioned several times, the Supreme Court has decisively held that "§ 1441(a) does not permit removal by any counterclaim defendant, including parties brought into the lawsuit for the first time by the counterclaim." *Id.* at 1748. Section 1441(a), therefore, does not permit Wilmington's removal.

The only party it *would* permit to remove is Lazarus, since only Lazarus was an original defendant. But the time for him to remove has long expired. Section 1446 of the removal statute, once again, provides that the original defendant may file for removal "within 30 days after receipt . . . through service or otherwise, of a copy of the initial pleading." § 1446(b)(1). The District of Columbia Superior Court's electronic case filing system reflects that Lazarus was formally served with both the complaint and the summons on December 9, 2019. Lazarus, therefore, would have had thirty days thereafter (i.e., until January 8, 2020) to remove this action to federal court. Under § 1441(b)(2), Lazarus's removal technically would have violated the forum-defendant rule, since he is a D.C. domiciliary. *See* § 1441(b)(2); *see also* Complaint, ECF No. 1-1 at 7. But the forum-defendant rule is non-jurisdictional, and so Karizad could have waived its objection and allowed the action to proceed in federal court. *See, e.g.*, *Holmstrom v. Peterson*, 492 F.3d 833, 836 (7th Cir. 2007) ("[F]ailure to comply with § 1441(b)'s forum-defendant rule does not result in a lack of subject-matter jurisdiction."). Because Lazarus never removed, however, and the 30-day removal clock has now long run out, the Court agrees with Lazarus that this action was never timely removed.

## IV. CONCLUSION

For those reasons, the Court will **GRANT** Lazarus's motion to remand, ECF No. 10, and will **REMAND** this case to the District of Columbia Superior Court. It will also **DENY AS MOOT** Lazarus's motion to strike Karizad's affidavit, ECF No. 16, because even if the parties are

completely diverse, the case was improperly removed. Last, because the Court will remand the case, it will also **DENY** Wilmington's pending motion to dismiss, ECF No. 7. A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 26th day of February, 2021.

*Royce C. Lamberth*

Royce C. Lamberth
United States District Judge